UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:12-CV-144-RJC

| MICHAEL EUGENE HUNT, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| YASMIN GRADY, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on consideration of Defendant's Motion for Summary Judgment on the claims of excessive force and assault and battery that were raised by Plaintiff in his pro se complaint pursuant to 42 U.S.C. § 1983. For the reasons that follow, Defendant's Motion for Summary Judgment will be granted and the complaint will be dismissed with prejudice.

## I.  BACKGROUND

Plaintiff is a prisoner of the State of North Carolina and is serving a term of life imprisonment following his conviction for first-degree murder in Vance County in 1980. At the time he filed his complaint, Plaintiff was housed in the Alexander Correctional Institution within this district. On July 8, 2011, Plaintiff was in the dining hall at Alexander Correctional for his evening meal when Defendant, who is an officer within the prison, was supervising inmates by the window where inmates receive their tray of food. According to Plaintiff, an inmate dropped a glass on the floor near the location where food is served. Plaintiff proceeded to pick the glass up and he placed it by the ice machine where he contends dishes are normally placed. These dishes

1

are later picked up by inmates assigned to clean the dining area. (Doc. No. 33-2: Plaintiff's Aff. ¶ 7). Defendant observed this and informed Plaintiff that he had placed the glass in the wrong place and Defendant instructed him to put the dish in the dirty dish window. (Doc. No. 26-8: Defendant's Statement at 32). After Plaintiff received this order he contends that Defendant "walked up in [his] face talking very loud and hostile that drew attention of everyone in the dining hall." (Doc. No. 1: Compl. ¶¶ 13-14). Defendant denies this and states that it was Plaintiff that began cursing in response to her order. Defendant further states that Plaintiff approached her, punched her on the left side of her head causing her to fall to the ground, and then Plaintiff stomped Defendant's right leg. (Defendant's Statement at 32).

After this interaction ensued, officers quickly responded and Plaintiff was restrained in handcuffs and taken to segregation. Plaintiff was later brought up on disciplinary charges by prison authorities which included assault, use of profane language, and failing to obey a direct order. Following a disciplinary hearing, Plaintiff was found guilty of all charges and ordered to serve nearly 18 months in "supermax lock-up", 6-12 months in maximum custody and 6 months in intensive lock-up. (Compl. ¶ 47). Plaintiff states he mailed an affidavit to a superior court judge in Alexander County claiming that he had been assaulted by Defendant in the dining hall and he submitted an affidavit to the district attorney in an attempt to bring criminal charges but his efforts failed. Plaintiff then filed this § 1983 complaint contending that Defendant subjected him to excessive force when she allegedly struck him in the head with her fist while he was restrained on the floor. (Id. ¶¶ 48-50).

Defendant, through counsel, filed her motion for summary judgment and numerous supporting documents. Plaintiff was notified of his obligation in responding to the motion for

summary judgment pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he has filed a brief in opposition to summary judgment and a document labeled as "affidavit" which he states is submitted under penalty of perjury.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A court is bound to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587. (1986). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (italics in original). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

## III. DISCUSSION

### A. Disciplinary Hearing

A disciplinary hearing was held four days following the incident in the dining hall. Plaintiff was charged with three offenses: assault (A03), using profane language (C02), and disobeying a direct order (C03). (Doc. No. 26-5). Plaintiff did not attend the hearing and did not enter a plea to the charges. The hearing officer received evidence and considered statements

3

during the hearing and found Plaintiff guilty of all charged offenses.

B.     Internal Investigation

An investigation was initiated following the dining hall incident and was assigned to Correctional Captain Daren W. Bruce, who has been employed since 1989 with the North Carolina Division of Adult Correction, which is now part of the Department of Public Safety, and was formerly known as the Department of Correction. His investigation involved personally interviewing nine witnesses, and reviewing statements of other individuals that were directly involved or who witnessed the incident. The following is a summary of the evidence amassed during the investigation.

Officer Quigley was in the dining hall and overheard Defendant give a verbal to Plaintiff. Officer Quigley turned toward her direction and observed Plaintiff strike Defendant in the face. Defendant fell to the ground and Officer Quigley immediately moved in to assist her. Officer Quigley then witnessed Plaintiff begin to kick towards Defendant's upper torso area and her face. Defendant moved back and tried to push away from Plaintiff and Officer Quigley was able to wrap his arms around him and pulled him away from her and eventually took Plaintiff to the ground. Officer Quigley repeatedly ordered Plaintiff to cease his resistance and to submit to handcuffs but Plaintiff refused. Other officers soon arrived, including Officers Mullins and Captain Pinnix and they were able to restrain Plaintiff with handcuffs and he was escorted to segregation. Officer Quigley did not observe Defendant strike Plaintiff. (Doc. No. 26-8: Statement of Officer Quigley at 12-16).[1]

---

[1] Officer Deborah Ready was working in the East Side of the dining hall and saw a food tray hit the floor and food spill on the floor. She saw Plaintiff and Officer Quigley fall to the floor and struggle and she came to assist. She did not see Plaintiff strike the Defendant. (Doc. No. 26: Statement of Deborah Ready at 17-20).

4

Correctional Officer Charles Pinnix also responded to the incident and observed Defendant getting up from the floor. He stated that "she looked stunned, like maybe she had been hit in the head or something." Officer Quigley continued to try to restrain Plaintiff and Officer Pinnix assisted him along with Defendant whom he observed trying to strike at Plaintiff with a closed fist. Officer Pinnix stated she "still looked stunned and possibly hurt and he grabbed her hand and pulled her away and I advised her we had control of the inmate" and he asked another staff member to assist Defendant in leaving the dining hall. Officer Pinnix "then escorted the inmate from the dining hall, utilizing a bent wrist. Once outside the dining hall, Sergeant Barrette assisted in escorting [Plaintiff] to segregation." (Doc. No. 26-8: Statement of Correctional Officer Pinnix at 8-11).

Defendant provided a statement in which she described Plaintiff cursing at her after she ordered Plaintiff to move the glass. Defendant further stated that Plaintiff approached her and punched her in the side of the head, knocking her to the ground, and then began trying to kick her. Defendant stated that once she was on the ground Plaintiff continued to pursue her and that all she could think of was to defend herself while at the same time feeling stunned. She describes the scene when the other officers came to assist her and the struggle to retrain Plaintiff who was continuing "to swing and kick at us." When Plaintiff could not "break loose, he began to buck his head back. I stepped over and tried using a pressure point behind the ear" although she does

---

Officer Mullins was present in the dining room and did not see Plaintiff attack Defendant but he did observe Plaintiff resist Officer Quigley's efforts to restrain him. (Doc. No. 26-8: Statement of Officer Mullins at 21-23).

James Amelia works in operations in the prison and he responded to the dining hall after he heard the alarm sound. He observed Defendant struggling with Plaintiff and he ran to assist. Officers Mullins, Quigley and Defendant were on the ground with Plaintiff. He also observed Defendant punch at Plaintiff with two overhand strikes but he could not be certain that Plaintiff was still struggling. (Doc. No. 26-8: Statement of James Amelia at 27-29).

5

not remember striking Plaintiff. (Doc. No. 26-8 at 30-34).[2]

In addition to examining witness statements, and interviewing witnesses, Correctional Officer Bruce also viewed a video of the incident that was captured by a surveillance camera that was in the dining hall. The footage does not appear to show Plaintiff striking Defendant, nor does it show Defendant striking Plaintiff while he was on the ground as he contends. What is telling from the video, however, is that a number of officers responded quickly once the incident began. Officer Quigley was the first to respond and he stated that he actually observed Plaintiff strike Defendant on the head causing her to fall to the floor, and then several other officers.[3]

C.   Plaintiff's Eighth Amendment Excessive Force Claim

Plaintiff alleges that Defendant employed excessive force in violation of the Eighth Amendment and he also pleads claims for assault and battery under North Carolina law.[4] The Eighth Amendment prohibits the infliction of "cruel and unusual punishments", U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain[.]" Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm was sufficiently serious—and a subjective component—that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and "whether

---

[2] A "pressure point" move is described by Correctional Officer Bruce as a "Control, Restraint & Defensive Technique ("CRDT"), i.e., application of pressure to the Mandibular Angle." (Doc. No. 26-2: Bruce Aff. ¶ 24).
[3] The video recording was submitted by Defendant to the Court in a disc format and as is listed as Exhibit A-5. (Doc. No. 26-7).
[4] Section 1983 claims are limited to those that are allegedly committed by state actors who have violated provisions of the Constitution or federal law. Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013). For these reasons, Plaintiff's state law claims will be dismissed.

the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillan, 503 U.S. 1, 7 (1992)).

In the present case, Plaintiff has failed to raise a genuine issue of material fact as to whether excessive force was used against him. The evidence demonstrates that Plaintiff refused to obey a direct command to stop resisting and that the use of reasonable force to restore order was justified. Officer Quigley stated that he personally observed Plaintiff strike Defendant in the head and that she fell down and he began to try and kick at her. Officer Quigley immediately responded and grabbed Plaintiff in an effort to subdue him but he continued to resist. As a result, Officer Quigley took him to the ground and gave repeated commands to stop resisting but he refused.[5] In response to this action, at least four or five other officers, including Defendant, responded to the scene in an effort to restrain Plaintiff.[6]

Based on the foregoing evidence of resistance, the Court finds Plaintiff has failed to establish that Defendant's use or attempted use of force was not carried out "in a good faith effort to maintain and restore discipline . . ." Defendant's statement makes clear – and Plaintiff offers no evidence to the contrary – that she was acting in good faith in trying to assist the other officers restrain Plaintiff when she tried to subdue him with the use of a "pressure point." Nor

---

[5] Further, Officer Quigley described the injuries he sustained during the incident in a statement written by his own hand: "I had hurt the right side of my head and my right knee during the assault." (Doc. No. 26-8 at 15).

[6] In his affidavit, Plaintiff denies that he resisted the officers, but the video surveillance would demonstrate otherwise. (Doc. No. 33-2: Plaintiff's Aff. at 3 ¶¶ 9-10). To the extent that the allegations in Plaintiff's affidavit contradict the events as shown on the videotape footage of the incident, the Court must "view [ ] the facts in the light depicted by the videotape." See Sawyer v. Asbury, 537 Fed. App'x 283, 291 (4th Cir. 2013) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007) (stating that when "opposing parties tell two different stories, one of which is blatantly contradicted" by video evidence contained in the record, "so that no reasonable jury could believe it, a court should not adopt that version of the facts . . .").

7

has Plaintiff presented any evidence which could support the conclusion that Defendant acted maliciously or sadistically.

Plaintiff has also failed to offer any evidence to support his claim that he suffered serious physical injury, or any injury for that matter, at the hands of Defendant. After Plaintiff was handcuffed he was escorted to segregation and then examined by a Nurse Sherry Bortz, LPN II. In her statement, she notes that Plaintiff expressed that he "doesn't want anything to do with medical. Denies injury from use of force." (Doc. No. 26-8 at 30). In his affidavit in opposition to summary judgment, Plaintiff does not attempt to refute this statement or even acknowledge it, nor does he deny that he was evaluated shortly after the incident.[7] The only mention he makes of pain is when he discusses his effort to obtain pain medication for headaches, but he does not say what caused the headaches, how frequently he has them, or describe the severity, if any. (Doc. No. 33-2: Plaintiff's Aff. at 7 ¶ 23).

Finally, Plaintiff was instructed that he must offer evidence in opposition to the motion for summary judgment in order to establish that there is a genuine issue for trial. Plaintiff claims in his complaint that there were nearly 100 inmates that witnessed Defendant use excessive force on him. (Compl. ¶ 28). Yet, Plaintiff has not produced a single witness statement or affidavit, save his own, from any of these inmates to support his claim of excessive force – a claim that is wholly belied by the record.

Plaintiff may not merely rely on the allegations he has presented thus far, rather he must present "specific facts showing that there is a genuine issue for trial." Celotex Corp, 477 U.S. at 322 n.3 (quoting Fed. R. Civ. P. 56(e)). Put another way, "the plain language of Rule 56(c)

---

[7] The incident occurred just after 4:20 p.m. and according to Nurse Bortz's statement, she evaluated Plaintiff around 4:30 p.m. See (Doc. No. 26-8: Bruce's Personnel Investigative Report at 5; Doc. No. 26-8: Statement of Sherry Bortz at 39).

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-33.

## IV.  CONCLUSION

The Court finds that the evidence of record demonstrates that Plaintiff has failed to show that there is a genuine issue of material fact for trial. Accordingly, Defendant's motion for summary judgment will be granted.

**IT IS, THEREFORE, ORDERED** that Defendant's motion for summary judgment is **GRANTED**, (Doc. No. 25), and Plaintiff's complaint is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Defendant's motion for leave to file a reply to Plaintiff's response is **GRANTED**. (Doc. No. 35).

The Clerk of Court is directed to close this case.

**IT IS SO ORDERED**.

Signed: September 29, 2014

Robert J. Conrad, Jr.
United States District Judge